**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1135-23

MISTY M. ELGERSMA,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
POLICE AND FIREMEN'S
RETIREMENT SYSTEM,

     Respondent-Respondent.

_____

Submitted May 29, 2025 – Decided June 5, 2025

Before Judges Natali and Vinci.

On appeal from the Board of Trustees of the Police and Firemen's Retirement System, Department of the Treasury, PFRS No. xx9603.

Alterman & Associates, LLC, attorneys for appellant (Stuart J. Alterman, of counsel and on the briefs).

Gebhardt & Kiefer, PC, attorneys for respondent (Leslie A. Parikh and Robert J. Papazian, on the brief).

PER CURIAM

Petitioner Misty M. Elgersma appeals from a November 16, 2023 final agency decision of the Board of Trustees of the Police and Firemen's Retirement System (Board) denying her application for accidental disability retirement benefits (ADRB). In doing so, the Board adopted the initial decision of the Administrative Law Judge (ALJ), who determined petitioner's disability was not directly caused by a workplace incident and was, instead, the result of a pre-existing degenerative condition. We affirm.

On November 26, 2019, petitioner, who at the time had served for approximately sixteen years as a police officer in Sea Isle City, applied for ADRB claiming she suffered an injury to her thumb after she attempted to retrieve a fire extinguisher from her patrol vehicle. According to petitioner, she responded to a construction site where large bags filled with wood dust had caught fire. Petitioner claimed, in attempting to unclip the fire extinguisher, she "wrenched" her thumb and heard a "pop" followed by a "sharp throbbing pain." Petitioner stated the clip holding the fire extinguisher in the patrol vehicle was new and not broken in. She further maintained the injury rendered her "totally and permanently disabled from [performing] the duties of a police officer."

The Board denied petitioner's application, determining her disability was the "result of a pre-existing disease alone or a pre-existing disease that [was]

A-1135-23

aggravated or accelerated by the work effort." The Board further found petitioner was "totally and permanently disabled from the performance of [her] regular and assigned job duties," "physically or mentally incapacitated from the performance of [her] usual or other duties that [her] employer [was] willing to offer," the injury causing event was "identifiable as to time and place," the disability was "undesigned and unexpected," "occurred during and as a result of [her] regular or assigned duties," and was "not the result of [petitioner's] willful negligence." In light of these findings, the Board granted petitioner ordinary disability retirement benefits under N.J.S.A. 43:16A-6.

Petitioner filed an administrative appeal, and the matter was transmitted to the Office of Administrative Law as a contested case. Before the ALJ, petitioner testified regarding the injury, related medical treatments, her return to work, and two prior workers' compensation claims.

In further support, petitioner called Dr. Munir Ahmed, M.D., an orthopedic surgeon, who opined petitioner's disability was directly caused by the fire extinguisher incident because her pre-existing arthritis was asymptomatic, and she only became symptomatic after the incident which created constant pain and necessitated surgery. Dr. Jeffrey F. Lakin, M.D., a board-certified orthopedic surgeon, testified on behalf of the Board. Dr. Lakin

A-1135-23

disagreed with Dr. Ahmed and stated petitioner's arthritis, which he testified takes years to develop, was the "majority . . . contributing cause" of petitioner's disability, the accident was "minor[,] and . . . just caused an exacerbation of the underlying arthritis."

In a comprehensive September 26, 2023 written decision, the ALJ addressed the requirements for accidental disability benefits under our Supreme Court's decisions in Richardson v. Bd. of Trs., Police and Firemen's Ret. Sys., 192 N.J. 189 (2007), Gerba v. Bd. of Trs. of Pub. Emps.' Ret. Sys., 83 N.J. 174, 187 (1980), and Petrucelli v. Bd. of Trs. of Pub. Emps.' Ret. Sys., 211 N.J. Super. 280 (App. Div. 1986). Based on the trial testimony, the ALJ rejected Dr. Ahmed's diagnosis and instead found, based on Dr. Lakin's testimony, "petitioner [was] disabled as a direct result of her arthritis of the right hand, due to an aggravation of the pre-existing condition related to degenerative arthritis of the right hand."

In doing so, the ALJ credited Dr. Laken's testimony and noted he examined petitioner and reviewed her complete medical records, including those that predated the fire extinguisher incident, while Dr. Ahmed did not review petitioner's prior medical records and relied on her self-report that she did not suffer from pain in her right hand prior to the incident. The ALJ also concluded

4

Dr. Ahmed merely speculated that Dr. Stanley Marczyk, M.D., who performed the surgery on petitioner's thumb, mislabeled petitioner's arthritis as symptomatic instead of asymptomatic. Further, the ALJ explained Dr. Ahmed dismissed the prior testing of petitioner's grip strength as inconclusive notwithstanding the grip strength disparity between her right and left hands was evident years prior to the fire extinguisher incident.

The ALJ further found Dr. Lakin's diagnosis to be consistent with x-rays taken two weeks after the injury, Dr. Marczyk's preoperative and postoperative diagnoses, and further explained Dr. Marczyk's diagnosis is consistent with the type of surgery petitioner received, i.e., treatment for arthritis. Finally, the ALJ noted petitioner finished her workday on the day of the incident and continued to work as a fulltime police officer for ten months thereafter without any record of work restrictions or limitations. Thus, the ALJ concluded "petitioner's permanent and total disability was not traumatically caused by the [fire extinguisher incident] but rather is the result of . . . pre-existing degenerative conditions."

After noting the only outstanding issue in the case is "whether petitioner was permanently and totally disabled as a direct result of a traumatic event," the ALJ concluded "petitioner has not proven by a preponderance of the credible

evidence that her permanent and total disability occurred as a direct result" of the fire extinguisher incident. The ALJ found "both experts agreed that petitioner had pre-existing right-thumb arthritis at the time of the accident and the record demonstrated that petitioner's right thumb arthritis was previously symptomatic, as determined by the X-ray taken at the emergency room and previous medical records including the operative findings of arthritic changes to the CMC joint." The Board issued a final administrative decision adopting the ALJ's recommendation. This appeal followed.

As the parties acknowledge, the only issue before us is whether petitioner's disability was caused by the fire extinguisher injury, and not a pre-existing disease aggravated or accelerated by a workplace incident as required by Richardson. Relying primarily on Gerba and Petrucelli, petitioner argues neither her prior injuries nor her medical records establish she suffered from pre-existing symptomatic arthritis in her right hand prior to the fire extinguisher incident. She maintains "everything changed" after the incident when she "began experiencing a host of symptoms" in her right thumb, thus making it clear the incident was the "essential" cause of her disability. Under our decision in Petrucelli, petitioner asserts it is "entirely speculative" she would have

A-1135-23

developed her right thumb ailments independently of the fire extinguisher incident.

With respect to her prior injuries and medical tests, she further contends none of her previous incidents significantly affected her hands because she recalls only receiving a small cut on her right palm from a 1996 car accident and may have complained about possible hand "discomfort" from attempting to push a car away from her after being "pinned" by an intoxicated driver in 2007. She claims the 2008 grip test results did not address the condition of her hands because one test yielded a "normal score" and were administered because of a shoulder injury. Next, she asserts X-rays which showed "some mild thumb CMC arthritis and some mild radial subluxation of the thumb CMC joint" do not preclude her from ADRB because the incident does not need to be the sole cause of her disability, just the "essential" cause.

Finally, petitioner notes she worked as an officer for eleven years prior to the fire extinguisher incident without complaints about her hands, job reviews which called into question her physical ability, medical treatment for her hands prior to the incident, or missed work for a hand or finger injury. We reject all of these arguments.

7

"Our review of administrative agency action is limited." Russo v. Bd. of Trs., Police and Firemen's Ret. Sys., 206 N.J. 14, 27 (2011) (citing In re Herrmann, 192 N.J. 19, 27 (2007)). "An administrative agency's final quasi-judicial decision will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Ibid. (quoting Herrmann, 192 N.J. at 27-28). We consider:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [In re Proposed Quest Acad. Charter Sch. of Montclair Founders Grp., 216 N.J. 370, 385 (2013) (quoting Mazza v. Bd. of Trs., 143 N.J. 22, 25 (1995)).]

Moreover, "[i]f [we are] satisfied after [our] review that the evidence and the inferences to be drawn therefrom support the agency head's decision, then [we] must affirm even if [we] feel[] that [we] would have reached a different result." Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 588 (1988).

In order to qualify for accidental disability retirement benefits, a petitioner must establish they are "permanently and totally disabled as a direct result of a traumatic event occurring during and as a result of the performance of [their]

8

regular or assigned duties." N.J.S.A. 43:15A-43(a). In <u>Richardson</u>, 192 N.J. at 212-13, the Court explained to obtain accidental disability retirement benefits, a PFRS member must show:

1. that [they are] permanently and totally disabled;

2. as a direct result of a traumatic event that is

    a. identifiable as to time and place,

    b. undesigned and unexpected, and

    c. caused by a circumstance external to the member (not the result of pre-existing disease that is aggravated or accelerated by the work);

3. that the traumatic event occurred during and as a result of the member's regular or assigned duties;

4. that the disability was not the result of the member's willful negligence; an[d]

5. that the member is mentally or physically incapacitated from performing [their] usual or any other duty.

The "direct result" prong of <u>Richardson</u> is satisfied where the applicant demonstrates that a traumatic event was "the essential significant or the substantial contributing cause of the resultant disability." <u>Gerba</u>, 83 N.J. at 186. An applicant, however, will not qualify for accidental disability retirement benefits "[w]here there exists an underlying condition . . . which itself has not

been directly caused, but is only aggravated or ignited, by the trauma." Ibid.

The Gerba Court clarified, however:

> [A]n accidental disability in some circumstances may arise even though an employee is afflicted with an underlying physical disease bearing causally upon the resulting disability. In such cases, the traumatic event need not be the sole or exclusive cause of the disability. As long as the traumatic event is the direct cause, i.e., the essential significant or substantial contributing cause of the disability, it is sufficient to satisfy the statutory standard of an accidental disability even though it acts in combination with an underlying physical disease.
>
> [Id. at 187 (emphasis in original).]

In Korelnia v. Bd. of Trs. of Pub. Emps.' Ret. Sys., 83 N.J. 163, 170 (1980) (citing Gerba, 83 N.J. at 186), the Court further explained the direct result standard "does not require that the antecedent trauma be the exclusive or sole cause of the disability." "[A]n accidental disability may under certain circumstances involve a combination of both traumatic and pathological origins." Ibid. (citing Cattani v. Bd. of Trs., 69 N.J. 578, 586 (1976)).

Here, we are convinced the ALJ's findings, adopted by the Board, with respect to whether petitioner's disability was caused by a pre-existing condition were not arbitrary, capricious, or unreasonable, and, instead, are fully supported by the record. Russo, 206 N.J. at 27 (quoting Herrmann, 192 N.J. at 27-28).

10                                                                A-1135-23

First, petitioner's argument that the record lacks any evidence to suggest she suffered from pre-existing symptomatic arthritis in her hand is incorrect. According to Dr. Marczyk's report, he diagnosed petitioner with "underlying symptomatic CMC arthritis." The only evidence petitioner presented to rebut this report was Dr. Ahmed's speculation that Dr. Marczyk intended to characterize the condition as "asymptomatic" and her own testimony that she did not have pain in her right thumb prior to the incident. Regardless, establishing the requisite standard for ADRB as delineated in Gerba does not rest on whether the pre-existing condition was previously symptomatic but rather whether the workplace incident is a "direct cause, i.e., [an] essential significant or substantial contributing cause of the disability." 83 N.J. at 187.

Further, Dr. Lakin, found credible by the ALJ, reviewed Dr. Marczyk's operative report related to petitioner's thumb surgery, which stated Dr. Marczyk's intraoperative findings of a "marked arthritic thumb CMC joint" and his diagnosis of "right thumb carpometacarpal arthritis." Dr. Lakin also reviewed Dr. Marczyk's report with respect to x-rays conducted shortly after the fire extinguisher incident, which showed "mild thumb CMC arthritis and some mild radial subluxation of the thumb CMC joint." Dr. Lakin testified arthritis is a "longstanding[,] . . . degenerative process where the cartilage wears away and

11

then . . . bone rubs against . . . bone." Dr. Lakin further stated "arthritis in th[e] joint [at issue] takes years and years to develop" and concluded, based on the medical reports and his experience, petitioner was "totally and permanently disabled" but that the "underlying arthritis was the majority of the contributing cause . . . and the accident just caused an exacerbation of the underlying arthritis."

Having reviewed the record, we find no basis to conclude the Board's adoption of the ALJ's findings was arbitrary, capricious, or unreasonable. The ALJ's findings were fully supported by substantial credible evidence in the record and in accord with the controlling statutes and applicable case law. To the extent we have not addressed specifically any of defendant's remaining arguments, it is because we have concluded that they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

12